Ira LEEMON, Plaintiff,

v.

Gerry BURNS a/k/a John Henry, Steven Nocito, Franco Nocito, James Young, CCF Capital Group, Inc., Pines International Resort, Inc., and Whalen E. McMullen, Defendants.

No. 99 CIV 9432 (AJP).

United States District Court, S.D. New York.

May 2, 2001.

---

552

Michael R. Koblenz, Mound, Cotton & Wollan, New York City, for plaintiff.

Ross M. Abelow, Abelow & Cassandro, LLP, New York City, for defendants.

### OPINION AND ORDER

PECK, United States Magistrate Judge.

Plaintiff Ira Leemon has sued defendants CCF Capital Group, Inc., Steven Nocito, Franco Nocito, Gerry Burns a/k/a John Henry, Pines International Resorts, Inc., and Waylon McMullen (collectively "defendants"), claiming violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5, and breach of contract. Defendants moved to dismiss the complaint, *inter alia*, pursuant to Fed. R.Civ.P. 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act for failure to plead fraud with particularity and failure to state a claim upon which relief can be granted. The parties have consented to disposition of this action by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the complaint is dismissed with leave to replead.

### FACTS

#### The Complaint

According to the complaint:

In November 1998, defendants, individually and in their capacities as officers and directors of Pines and CCF, induced Leemon to invest in AMDL, Inc. (Dkt. No. 1: Compl. ¶¶ 20–23.)[1] Defendants repre-

---

1. The complaint alleges that CCF and Pines are "engaged in the business of raising venture capital in New York and in other jurisdictions." (Compl. ¶¶ 16, 18.)

sented to Leemon that if Leemon invested $150,000 in AMDL, defendants would supply an additional $150,000 to AMDL and together they would obtain management control of AMDL. (Compl. ¶ 23.) Defendants also promised Leemon that he would receive a promissory note for $150,000, as well as AMDL stock and AMDL stock incentives, and receive "appointment to a position of authority of AMDL" and "operational control of AMDL through written agreements of defendants who held the majority of the stock of AMDL." (Compl. ¶ 24.) Leemon gave defendants a check for $150,000 and received a promissory note from Pines. (Compl. ¶ 25 & Ex. A: Promissory Note.) In February 1999, at an AMDL Board of Directors meeting, Leemon's check was delivered to AMDL, but defendants never paid their additional $150,000. (Compl. ¶ 26.) Leemon was elected to AMDL's Board of Directors, but he was never placed in a leadership position because defendants never delivered their $150,000. (Compl. ¶¶ 26–27.) Leemon conclusorily alleges that "Defendants never intended to carry out the proposed plan and engaged in the activities described herein solely for the purpose of inducing plaintiff's investment of $150,000 for their own gain." (Compl. ¶ 28.)

Attached to the complaint as Exhibit A is a promissory note (the "Note") dated February 10, 1999 in the principal amount of $150,000, identifying Pines as the maker and Leemon as the payee. (Compl. Ex. A: Promissory Note.) The Note is signed by defendant Waylon McMullen as President of Pines. (*Id.*) Under the heading "terms of payment," the Note provides that "[a]ll principal shall be due and payable in 365 days. Therefore $150,000.00 shall be due and payable on February 8, 2000." (*Id.*) Under the heading "conversion rights," the Note provides that "Maker hereby grants to Payee the right to convert all or part of the Unpaid Principal herein into common stock of AMDL, Inc. NASDAQ symbol AMDL, a publicly traded company. The conversion right will be for 1,000,000 shares of stock for the total Principal." (*Id.*)

### Defendants' Motion to Dismiss

Defendants moved to dismiss the complaint on the grounds, *inter alia*, that: (1) the complaint fails to state a claim under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5 because the Note is not a security, and (2) the complaint fails to allege fraud with the specificity required by Rule 9(b) and the Private Securities Litigation Reform Act. (*See* Dkt. Nos. 3, 11–13, 18–19.)

The parties have consented to decision of this action by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Dkt. Nos. 25–30.)

## ANALYSIS

### I. THE APPLICABLE LAW

#### A. The Standard Governing a Motion to Dismiss Pursuant to Fed. R.Civ.P. 12(b)(6)

A district court should deny a motion to dismiss " 'unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief.' " *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir.1993) (quoting *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984)), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *accord, e.g., Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998); *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. 1071, 1080–81 (S.D.N.Y.1996) (Knapp, D.J. & Peck, M.J.); *In re Towers Fin. Corp. Noteholders Litig.,* 93 Civ. 0180, 1995 WL 571888 at * 11 (S.D.N.Y. Sept.20, 1995)

(Peck, M.J.), *report & rec. adopted,* 936 F.Supp. 126 (S.D.N.Y.1996) (Knapp, D.J.). A court must accept as true the facts alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party—here, plaintiff Leemon. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989).[2] This general rule also applies to fraud claims. *Grandon v. Merrill Lynch & Co.,* 147 F.3d at 188; *IUE AFL–CIO Pension Fund,* 9 F.3d at 1052; *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990) ("When fraud is asserted, the general rule is simply applied in light of Rule 9(b)'s particularity requirements.").[3]

Additionally, a Rule 12(b)(6) motion challenges only the face of the pleading. Thus, in deciding a 12(b)(6) motion, "the Court must limit its analysis to the four corners of the complaint." *Vassilatos v. Ceram Tech Int'l Ltd.,* 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y. May 19, 1993) (citing *Kopec v. Coughlin,* 922 F.2d 152, 154–55 (2d Cir.1991)).[4]

The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference. *E.g., Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instru-ment attached to it as an exhibit or any statements or documents incorporated in it by reference ...."); *Paulemon v. Tobin,* 30 F.3d 307, 308–09 (2d Cir.1994); *Brass v. American Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *LaSalle Nat'l Bank v. Duff & Phelps,* 951 F.Supp. at 1081. Here, Leemon has attached a promissory note to his complaint. (*See* Compl. Ex. A: Promissory Note.) Accordingly, the Court will consider that document on this motion.

**B. Pleading Requirements for Fraud Under Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act**

In considering the sufficiency of Leemon's § 10(b) and SEC Rule 10b–5 claims, the Court must determine the adequacy of the complaint's allegations pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *E.g., Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 168 (2d Cir.2000) ("It is well-settled in this Circuit that a complaint alleging securities fraud must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure."); *Anatian v. Coutts Bank (Switzerland) Ltd.,* 193 F.3d 85, 88 (2d Cir.1999) ("when a

---

**2.** *Accord, e.g., LaSalle Nat'l Bank v. Duff & Phelps,* 951 F.Supp. at 1081; *In re Towers,* 1995 WL 571888 at *11; *Macmillan, Inc. v. Federal Ins. Co.,* 764 F.Supp. 38, 41 (S.D.N.Y. 1991).

**3.** *Accord, e.g., LaSalle Nat'l Bank v. Duff & Phelps,* 951 F.Supp. at 1081; *In re Towers,* 1995 WL 571888 at *11.

**4.** *Accord, e.g., Aniero Concrete Co. v. New York City Constr. Auth.,* 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.,* 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar.9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and eval-uates the legal viability of the allegations contained therein."); *LaSalle Nat'l Bank v. Duff & Phelps,* 951 F.Supp. at 1081; *In re Towers,* 1995 WL 571888 at *11.

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed.R.Civ.P. 56. Fed.R.Civ.P. 12(b); *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000); *Fonte v. Board of Managers of Cont'l Towers Condo.,* 848 F.2d 24, 25 (2d Cir.1988); *accord, e.g., LaSalle Nat'l Bank v. Duff & Phelps,* 951 F.Supp. at 1081; *In re Towers,* 1995 WL 571888 at *11.

plaintiff alleges securities fraud, we must ... consider the complaint in light of Fed. R.Civ.P. 9(b)") *cert. denied,* 528 U.S. 1188, 120 S.Ct. 1241, 146 L.Ed.2d 100 (2000); *Shields v. Citytrust Bancorp,* 25 F.3d 1124, 1127 (2d Cir.1994); *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. 1071, 1081 (S.D.N.Y.1996) (Knapp, D.J. & Peck, M.J.); *In re Towers Fin. Corp. Noteholders Litig.,* 93 Civ. 0180, 1995 WL 571888 at * 12 (S.D.N.Y. Sept.20, 1995) (Peck, M.J.), *report & rec. adopted,* 936 F.Supp. 126 (S.D.N.Y.1996) (Knapp, D.J.). Fed.R.Civ.P. 9(b) sets forth special pleading requirements for fraud claims:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Although Rule 9(b) must be read together with Rule 8(a), which requires only a "short and plain statement of the claim," *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990), the fraud allegations in the complaint must be specific enough to allow the defendant "a reasonable opportunity to answer the complaint," *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).[5] Furthermore, the complaint must give the defendant "adequate information" to allow the defendant "to frame a response." *Ross v. A.H. Robins Co.,* 607 F.2d at 557–58; *Ryan v. Hunton & Williams,* No. 99–CV–5938, 2000 WL 1375265 at *6 (E.D.N.Y. Sept.20, 2000) ("Allegations of fraud ... must be specific enough to provide a defendant with 'a reasonable opportunity to answer the com-plaint and adequate information to frame a response.' ").

Because Leemon's complaint asserts a claim for securities fraud, Rule 9(b)'s requirements are supplemented by the parallel requirements of the Private Securities Litigation Reform Act ("PSLRA"). *See, e.g., Novak v. Kasaks,* 216 F.3d 300, 306–07 (2d Cir.), *cert. denied,* 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000); *In re Revlon, Inc. Secs. Litig.,* 99 Civ. 10192, 2001 WL ·293820 at *6 (Mar. 27, 2001) ("A complaint alleging a violation of ·section 10(b) must satisfy the particularity requirement of Rule 9(b) as well as the pleading requirements of the PSLRA.") (citation omitted); *Rich v. Maidstone Fin., Inc.,* 98 Civ. 2569, 2001 WL 286757 at *4–7 (S.D.N.Y. Mar.23, 2001); *Vogel v. Sands Bros. & Co.,* 126 F.Supp.2d 730, 737 (S.D.N.Y.2001). The PSLRA provides:

> (b) *Requirements for securities fraud actions*
>
> (1) Misleading statements and omissions
>
> In any private action arising under this chapter in which the plaintiff alleges that the defendant—
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the com-

---

5. *Accord, e.g., LaSalle Nat'l Bank v. Duff & Phelps,* 951 F.Supp. at 1081; *In re Towers,* 1995 WL 571888 at * 12; *O'Brien v. National Prop. Analysts Partners,* 719 F.Supp. 222, 225 (S.D.N.Y.1989) ("Rule 9(b) is designed to pro-vide a defendant with fair notice of a plaintiff's claim in order to enable a defendant to prepare a defense, protect defendant's reputation or goodwill from harm, and reduce the number of strike suits.").

plaint shall state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u–4(b)(1).

Even before passage of the PSLRA, in order to satisfy the Rule 9(b) pleading requirement for fraud under § 10(b) and Rule 10b–5, the Second Circuit required that the complaint must:

(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir.1995); *Shields v. Citytrust Bancorp*, 25 F.3d at 1127–28; *LaSalle Nat'l Bank v. Duff & Phelps*, 951 F.Supp. at 1081–82, see also, e.g., *In re Towers*, 1995 WL 571888 at *13 ( & cases cited therein). This requirement continues after passage of the PSLRA. *E.g., Novak v. Kasaks*, 216 F.3d at 306; *In re Complete Mgmt. Inc. Secs. Litig.*, 153 F.Supp.2d 314, 329 (S.D.N.Y.2001); *In re Revlon, Inc. Secs. Litig.*, 2001 WL 293820 at *6; *Rich v. Maidstone Fin., Inc.*, 2001 WL 286757 at *6; *Vogel v. Sands Bros. & Co.*, 126 F.Supp.2d at 737.

The Second Circuit, both before and after passage of the PSLRA, requires that "a plaintiff alleging fraud in connection with a securities transaction must specifically allege the acts or omissions upon which his claim rests. It will not do merely to track the language of Rule 10b–5 and rely on such meaningless phrases as 'scheme and conspiracy' or 'plan and scheme and course of conduct to deceive.' " *Ross v. A.H. Robins Co.*, 607 F.2d at 557; see, e.g., *Novak v. Kasaks*, 216 F.3d at 306–11 (discussing particularity and scien-

ter requirements); *Rich v. Maidstone Fin., Inc.*, 2001 WL 286757 at *7.[6]

Furthermore, a complaint alleging fraud against multiple defendants must state the allegations specifically attributable to each individual defendant. *E.g., DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir.1987); *Rich v. Maidstone Fin., Inc.*, 2001 WL 286757 at *6 ("when fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of by each defendant. A complaint may not simply clump defendants together in vague allegations to meet the pleading requirements of Rule 9(b).") (internal quotations, citations, & alterations omitted; collecting cases).[7]

As for scienter, although Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally," the relaxation of Rule 9(b)'s specificity requirement does not give " 'license to base claims of fraud on speculation and conclusory allegations.' " *Acito v. IMCERA*, 47 F.3d at 52 (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990)); *LaSalle Nat'l Bank v. Duff & Phelps*, 951 F.Supp. at 1082. Instead, the Second Circuit has held that the plaintiff must allege enough facts to support "a strong inference of fraudulent intent." *E.g., Ganino v. Citizens Utils. Co.*, 228 F.3d at 169; *Novak v. Kasaks*, 216 F.3d at 307–12; *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir.1999); *Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir.1996); *Acito v. IMCERA Group*, 47 F.3d at 53; *Shields v. Citytrust Bancorp*, 25 F.3d at 1128–29; *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268

---

6. *See also, e.g., LaSalle Nat'l Bank v. Duff & Phelps*, 951 F.Supp. at 1082; *In re Towers*, 1995 WL 571888 at *13.

7. *See also, e.g., LaSalle Nat'l Bank v. Duff & Phelps*, 951 F.Supp. at 1082; *In re Towers*, 1995 WL 571888 at *13.

(2d Cir.1993), *cert. denied,* 511 U.S. 1017, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994).

Congress has codified the Second Circuit's scienter standard in the PSLRA, which provides that:

> In any private action arising under this chapter ..., the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(2); *see, e.g., Ganino v. Citizens Utils. Co.,* 228 F.3d at 169–70 (the PSLRA's "legislative history leaves no doubt that the PSLRA 'heightened the requirement for pleading scienter to the level used by the Second Circuit'") (quoting *Press v. Chemical Inv. Servs. Corp.,* 166 F.3d 529, 537–38 (2d Cir.1999)); *Novak v. Kasaks,* 216 F.3d at 310–11 ("We conclude that the PSLRA effectively raised the nationwide pleading standard to that previously existing in this circuit .... When all is said and done, we believe that the enactment of paragraph (b)(2) did not change the basic pleading standard for scienter in this circuit (except by the addition of the words 'with particularity'). Accordingly, we hold that the PSLRA adopted our 'strong inference' standard ....."); *Rothman v. Gregor,* 220 F.3d at 90; *In re Revlon, Inc. Secs. Litig.,* 2001 WL 293820 at *7; *Vogel v. Sands Bros. & Co.,* 126 F.Supp.2d at 739.

### C. Elements of a Primary § 10(b)/ Rule 10b–5 Claim

Section 10(b) of the Exchange Act and SEC Rule 10b–5 prohibit fraudulent activities in connection with the purchase or sale of securities, whether or not those securities are registered.[8]

In order to state a prima facie case of a violation of § 10(b) and Rule 10b–5, a plaintiff must allege that:

> [1] "in connection with the purchase or sale of securities, the defendant, [2] acting with scienter, [3] made a false material representation or omitted to disclose material information and that [4] plaintiff's reliance on defendant's action [5] caused [plaintiff] injury."

*In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 264 (2d Cir.1993) (quoting *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985)), *cert. denied,* 511 U.S. 1017, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994).[9] The failure to establish any element is fatal to a section 10(b)/ Rule 10b–5 claim. *See, e.g., Central Bank*

---

**8.** Section 10(b) makes it unlawful:

> To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe ....

15 U.S.C. § 78j(b). Further, Rule 10b–5 makes it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made ... not misleading, or
> (c) To engage in any act, practice, or course of business which operates or

would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

**9.** *Accord, e.g., Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 160 (2d Cir.2000); *Rothman v. Gregor,* 220 F.3d 81, 89 (2d Cir.2000); *Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 189 (2d Cir.1998); *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. 1071, 1082 (S.D.N.Y.1996) (Knapp, D.J. & Peck, M.J.); *In re Towers Fin. Corp. Noteholders Litig.,* 1995 WL 571888 at *13 (S.D.N.Y. Sept.20, 1995) (Peck, M.J.), *report & rec. adopted,* 936 F.Supp. 126 (S.D.N.Y.1996) (Knapp, D.J.).

of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 190–91, 114 S.Ct. 1439, 1455, 128 L.Ed.2d 119 (1994); Wilson v. Comtech Telecomm. Corp., 648 F.2d 88, 94 (2d Cir.1981) ("Because we find that [plaintiff] has failed to demonstrate his reliance on any actions by appellees, we need not reach the other elements of his 10b–5 claim.").[10]

## II. DEFENDANTS HAVE NOT RE-BUTTED THE PRESUMPTION THAT THE NOTE AT ISSUE IN THIS CASE IS SUBJECT TO THE SECURITIES LAWS

■ Defendants contend that the Court lacks subject matter jurisdiction over this action because "the Note is not a security" and hence the securities fraud laws do not apply. (Dkt. No. 12: Defs. Br. at 11–17.)[11] While the Securities Exchange Act of 1934 defines "security" to mean, inter alia, "any note" with a maturity greater than nine months, 15 U.S.C. § 78c(a)(10),[12] "the phrase 'any note' should not be interpreted to mean literally 'any note,' but must be understood against the backdrop of what Congress was attempting to accomplish in enacting the Securities Acts." Reves v. Ernst & Young, 494 U.S. 56, 63, 110 S.Ct. 945, 950, 108 L.Ed.2d 47 (1990).

In order to determine whether the Note at issue is subject to the securities laws, this Court must apply the "family resemblance" test established by the Second Circuit and adopted by the Supreme Court in Reves v. Ernst & Young, 494 U.S. at 64–65, 110 S.Ct. at 950–51. See, e.g., Pollack v. Laidlaw Holdings, Inc., 27 F.3d 808, 811–12 (2d Cir.1994), cert. denied, 513 U.S. 963, 115 S.Ct. 425, 130 L.Ed.2d 339 (1994); Banco Espanol de Credito v. Security Pac. Nat'l Bank, 973 F.2d 51, 55 (2d Cir.1992), cert. denied, 509 U.S. 903, 113 S.Ct. 2992, 125 L.Ed.2d 687 (1993). As the Second Circuit explained in Pollack v. Laidlaw Holdings, Inc.:

Under the family resemblance test, a note is presumed to be a security unless the note resembles one of the several judicially-enumerated instruments that are not securities.... In applying this test, we look to four factors. If the note is not sufficiently similar to one of the non-security instruments, then we must determine whether another category of such instruments should be judicially created by reference to the same four factors, identified in Reves as follows:

(1) the motivations that would prompt a reasonable buyer and seller to enter into the transaction; (2) the plan of

10. See also, e.g., In re Carter–Wallace, Inc. Secs. Litig., 220 F.3d 36, 39 (2d Cir.2000) (affirming dismissal of 10b–5 claim on basis that plaintiff failed to adequately allege scienter); Rothman v. Gregor, 220 F.3d at 98 (same); Chill v. General Elec. Co., 101 F.3d 263, 271 (2d Cir.1996) (same); In re Scholastic Sec. Litig., 99 Civ. 2447, 2000 WL 91939 at *13 (S.D.N.Y. Jan.27, 2000); In re Glenayre Tech., Inc. Secs. Litig., 96 Civ. 8252, 1998 WL 915907 at *2 n. 4 (S.D.N.Y. Dec.30, 1998) ("Since the plaintiffs fail to adequately plead scienter, I need not address the other grounds for dismissal articulated by the defendants."), aff'd mem., 201 F.3d 431 (2d Cir.1999); The High View Fund, L.P. v. Hall, 27 F.Supp.2d 420, 426 (S.D.N.Y.1998); LaSalle Nat'l Bank v. Duff & Phelps, 951 F.Supp. at 1082; In re

Towers, 1995 WL 571888 at *13; First Equity Corp. v. Standard & Poor's Corp., 690 F.Supp. 256, 260 (S.D.N.Y.1988) ("Because I hold that plaintiffs have failed to demonstrate the existence of any genuine issue of fact as to defendant's scienter. I need not address defendant's remaining arguments ...."), aff'd, 869 F.2d 175 (2d Cir.1989).

11. Diversity is lacking because plaintiff and some or all defendants are citizens of New York. (Dkt. No. 1: Compl. ¶¶ 4–12.)

12. The Exchange Act provides that "security" "shall not include ... any note ... which has a maturity at the time of issuance ... not exceeding nine months ...." Id.

distribution of the instrument; (3) the reasonable expectations of the investing public; and (4) whether some factor, such as the existence of another regulatory scheme, significantly reduces the risk of the instrument, thereby rendering application of the securities laws unnecessary.

*Pollack v. Laidlaw Holdings, Inc.,* 27 F.3d at 811–12.[13]

The judicially-enumerated types of notes that are not securities are:

the note delivered in consumer financing, the note secured by a mortgage on a home, the short-term note secured by a lien on a small business or some of its assets, the note evidencing a "character loan" to a bank customer, short-term notes secured by an assignment of accounts receivable, ... a note which simply formalizes an open-account debt incurred in the ordinary course of business.... [and] notes evidencing loans by commercial banks for current operations.

*Reves v. Ernst & Young,* 494 U.S. at 65, 110 S.Ct. at 951; *accord, e.g., Pollack v. Laidlaw Holdings, Inc.,* 27 F.3d at 811 n. 4.

"A party asserting that a note of more than nine months maturity is not within the 1934 Act ... has the burden of showing that 'the context otherwise requires.' " *Exchange Nat'l Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1137–38 (2d Cir.1976)

(Friendly, C.J.); *accord, e.g., Private Corp. Advisors, Inc. v. Heard,* 1995 WL 66647 at *6; *Singer v. Livoti,* 741 F.Supp. at 1048; *Equitable Life Assurance Soc. v. Arthur Andersen & Co.,* 655 F.Supp. 1225, 1234–35 (S.D.N.Y.1987).

■ Here, the complaint alleges that "Plaintiff was told that in return for his investment of $150,000 he would receive a promissory note of Pines of $150,000, stock in AMDL, appointment to a position of authority of AMDL, stock incentives in AMDL and operational control of AMDL through written agreements of defendants who held the majority of the stock of AMDL." (Compl.¶ 24.) The promissory note attached to the complaint states that the principal of $150,000 "shall be due and payable in 365 days" and that the unpaid principal is convertible "into common stock of AMDL." (Compl. Ex. A: Promissory Note.) Accepting the allegations in the complaint as true, as the Court must at this juncture, the Court finds that the Note neither fits into any of the judicially-created categories of notes that are not securities nor bears a strong family resemblance to any of those categories. The fact that the Note's original principal could be converted into AMDL common stock is a strong factor for holding that the Note is a security. Accordingly, for purposes of the motion to dismiss, the Note is a security within the meaning of the 1934 Act.[14]

---

13. For cases applying the *Reves* four factor test, *see, e.g., SEC v. Todt,* 98 Civ. 3980, 2000 WL 223836 at *8 (S.D.N.Y. Feb.25, 2000), *aff'd* No. 00–6101, 2001 WL 345151 (2d Cir. Apr.5, 2001); *Benedict v. Amaducci,* 92 Civ. 5239, 1995 WL 413206 at *9–10, (S.D.N.Y. July 12, 1995); *Private Corp. Advisors, Inc. v. Heard,* 92 Civ. 5952, 1995 WL 66647 at *7–8 (S.D.N.Y. Feb.17, 1995); *Jaquith v. Newhard,* 91 Civ. 7503, 1993 WL 127212 at *9–10 (S.D.N.Y. Apr.20, 1993); *Heine v. Colton, Hartnick, Yamin & Sheresky,* 786 F.Supp. 360, 371–72 (S.D.N.Y.1992); *National Bank of Yu-*

*goslavia v. Drexel Burnham Lambert, Inc.,* 768 F.Supp. 1010, 1014–16 (S.D.N.Y.1991); *Varnberg v. Minnick,* 760 F.Supp. 315, 325–26 (S.D.N.Y.1991); *Premier Microwave Corp. v. Comtech Telecomms. Corp.,* 88 Civ. 2570, 1991 WL 12430 at *4–5 (S.D.N.Y. Jan.28, 1991); *Singer v. Livoti,* 741 F.Supp. 1040, 1046–51 (S.D.N.Y.1990).

14. That there is no indication that any public distribution of the Note was intended does not take the transaction in this case outside the protection of the federal securities laws. *See,*

## III. *DEFENDANTS' MOTION TO DISMISS IS GRANTED BECAUSE LEEMON'S COMPLAINT DOES NOT PLEAD SCIENTER WITH SUFFICIENT PARTICULARITY*

As discussed at pages 556–57 above, a plaintiff alleging securities fraud must allege enough facts to support "a strong inference of fraudulent intent." "Such intent can be established 'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.' " *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168–69 (2d Cir.2000) (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994)); *accord, e.g., Novak v. Kasaks*, 216 F.3d 300, 307–311 (2d Cir.), *cert. denied*, 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995); *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268–69 (2d Cir.1993), *cert. denied*, 511 U.S. 1017, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994); *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.*, 951 F.Supp. 1071, 1086 (S.D.N.Y.1996) (Knapp, D.J. & Peck, M.J.).

Here, Leemon alleges that the defendants "induced him to agree to advance $150,000 to AMDL under the representation that an additional $150,000 would be supplied by defendants to AMDL, with the intention thereby of gaining control of the management of AMDL," and that he "was told that in return for his investment of $150,000 he would receive a promissory note of Pines of $150,000, stock in AMDL, appointment to a position of authority of AMDL, stock incentives in AMDL and operational control of AMDL through written agreements of defendants who held the majority of the stock of AMDL." (Compl.¶¶ 23–24.) Leemon further alleges that he paid the $150,000 and received a promissory note for $150,000 and was elected to AMDL's Board of Directors. (Compl.¶¶ 25–26.) AMDL's Board, however, did not put him in a leadership position, "stating it would not do so until the further $150,000 was delivered"; "[t]he $150,000 of defendants was never delivered and the proposed plan of control was never carried out." (Compl.¶¶ 26–27.) Leemon then alleges conclusorily that "Defendants never intended to carry out the proposed plan and engaged in the activities described herein solely for the purpose of inducing plaintiff's investment of $150,000 for their own gain." (Compl.¶ 28.)

In short, Leemon alleges that defendants made various promises in order to induce him to pay $150,000 to AMDL and that defendants did not make good on their promises. He does not, however, allege any facts in support of his conclusory, *ipse dixit* assertion that the defendants never intended to honor their obligations.[15]

---

*e.g., Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 594–95 (6th Cir.2000); *Stoiber v. SEC*, 161 F.3d 745, 752 (D.C.Cir.1998) ("Admittedly, the plan of distribution in part signals that the notes might not be securities, but that factor by itself is not dispositive."), *cert. denied*, 526 U.S. 1069, 119 S.Ct. 1464, 143 L.Ed.2d 549 (1999); *Trust Co. of Louisiana v. N.N.P. Inc.*, 104 F.3d 1478, 1489 (5th Cir.1997) ("The fact that there was no public distribution is not fatal to [plaintiff]'s securities laws claims."); *National Bank of Yugoslavia v. Drexel Burnham Lambert, Inc.*, 768 F.Supp. at 1015–16 ("A debt instrument may be distributed to but one investor, yet be a 'security.' Any other interpretation of *Reves* would contradict the Supreme Court's determination that in the federal securities laws Congress 'enacted a definition of "security" sufficiently broad to encompass virtually any instrument that might be sold as an investment.' ") (citations omitted); *Tannebaum v. Clark*, No. 88 C 7312, 1991 WL 39671 at *4 (N.D.Ill. Mar.18, 1991).

**15.** *See, e.g., Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir.2000) ("It is well-settled that

Accordingly, plaintiff Leemon's 10b–5 claim is dismissed for failure to plead scienter with the requisite particularity. Because Leemon's breach of contract claim is governed by state law, Leemon's federal Rule 10b–5 claim is being dismissed without prejudice, and diversity is lacking (see page 13 fn. 11 above), the Court declines to exercise supplemental jurisdiction over Leemon's breach of contract claim at this time.[16] Leemon is given leave to replead

'[t]he failure to carry out a promise made in connection with a securities transaction is normally a breach of contract' and does not justify a Rule 10b–5 action."); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) ("We decline [plaintiff]'s invitation to infer fraudulent intent from the fact that [defendant] made a number of contracts ... and never performed any of them.... Contractual breach, in and of itself, does not bespeak fraud, and generally does not give rise to tort damages. Accordingly, we affirm dismissal of the Rule 10b–5 claim for failure to state a claim."); *Dealtime.com v. McNulty*, 123 F.Supp.2d 750, 761 (S.D.N.Y.2000) (" '[t]he failure to carry out a promise made in connection with a securities transaction is normally a breach of contract,' not federal securities fraud"); *Blumenthal v. The Sea Hotel Co.*, 99 Civ. 4881, 2000 WL 1349249 at *4 (S.D.N.Y. Sept.19, 2000) (Peck, M.J.); *Gerstenfeld v. Nitsberg*, 190 F.R.D. 127, 130, 132 (S.D.N.Y.1999) (Stein, D.J. & Peck, M.J.) (RICO complaint dismissed for failure to plead fraudulent intent with particularity where "complaint allege[d] without further factual basis that [defendant] did not intend to comply with his promises"); *Champion Titanium Horseshoe, Inc. v. Wyman–Gordon Inv. Castings, Inc.*, 925 F.Supp. 188, 190 (S.D.N.Y. 1996) ("[T]he only 'fact' alleged to show that [defendant's] representations were false when made is the bald assertion that [defendant] failed to so perform. This is patently inadequate on its face to establish either falsity or intent; indeed, if it were otherwise every complaint for breach of contract would *ipso facto* state a claim for fraud."); *Thacker v. Medaphis Corp.*, 97 Civ. 2849, 1998 WL 684595 at *4 (S.D.N.Y. Sept.30, 1998) ("'district courts in the Second Circuit have repeatedly rejected attempts to convert a breach of contract claim into a fraud claim by merely alleging that a contracting party never intended to fulfill its promises"); *Drexel Burnham Lambert Inc. v. Saxony Heights Realty Assocs.*, 777 F.Supp. 228, 234 (S.D.N.Y.1991) ("At bottom, this case is a breach of contract case, not a [securities] fraud case. The security fraud claims merely restate the contract claims in ... the Amended Complaint. It is well-settled that a simple breach of contract does not constitute fraud. Moreover, an attempt to convert a contract claim into a tort claim by the additional naked assertion that the breaching party never intended to perform is doomed to fail.") (citations omitted); *Soper v. Simmons Int'l Ltd.*, 632 F.Supp. 244, 249 (S.D.N.Y.1986) ("[M]ere failure of promised performance has never permitted a factual finding that defendants never intended to perform.... Although one who makes a contractual promise with the undisclosed intention to breach it can be held liable for fraud, proof of such intention must be based on more than a mere showing of nonperformance.").

16. See, e.g., *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n. 7, 108 S.Ct. 614, 619 & n. 7, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *In re Merrill Lynch Ltd. P'ships Litig. (Lanza)*, 154 F.3d 56, 61 (2d Cir.1998); *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir.1994); *Johns–Davila v. City of New York*, 99 Civ. 1885, 2000 WL 1725418 at *12 (S.D.N.Y. Nov.20, 2000) (Peck, M.J.); *Vasquez v. Artuz*, 97 Civ. 8427, 1999 WL 440631 at *1 n. 1 (S.D.N.Y. June 28, 1999) (Peck, M.J.); *Berman v. Parco*, 986 F.Supp. 195, 219 (S.D.N.Y. 1997) (Wood, D.J. & Peck, M.J.); *Buti v. Impressa Perosa, S.R.L.*, 935 F.Supp. 458, 475 (S.D.N.Y.1996), (Schwartz, D.J. & Peck, M.J.), *aff'd*, 139 F.3d 98 (2d Cir.), *cert. denied*, 525 U.S. 826, 119 S.Ct. 73, 142 L.Ed.2d 57 (1998); *In re Towers Fin, Corp. Noteholders Litig.*, 93 Civ. 0810, 1996 WL 393579 at *20 (S.D.N.Y. July 15, 1996) (Knapp, D.J. & Peck, M.J.); *Sheridan v. Jaffe*, 94 Civ. 9344, 1996 WL 345965 at *10 (S.D.N.Y. June 24, 1996) (Knapp, D.J. & Peck, M.J.); *Shain v. Duff &*

within thirty days if he believes he can plead specific facts supporting a strong inference of fraudulent intent, separately specified as to each defendant, with the caveat that if Leemon chooses to replead, he should be mindful of the PSLRA's requirement of a mandatory Rule 11 review at the conclusion of any security action. *See* 15 U.S.C. § 78u–4(c)(1)–(2); *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166–67 (2d Cir.1999).

SO ORDERED.

*Phelps Credit Rating Co.*, 915 F.Supp. 575, 584 (S.D.N.Y.1996) (Knapp, D.J. & Peck, M.J.).

The Court need not address the motion to dismiss for lack of personal jurisdiction of defendants Burns, McMullen and Frank Nocito. The Court also notes that plaintiff had voluntarily dismissed the case against defendant Young. (Dkt. No. 22.)